UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

TODD C. BANK,

                                Plaintiff,                     MEMORANDUM
                                                               AND ORDER
            - versus -                                         15-cv-4858 (JG)

UBER TECHNOLOGIES INC.,

                                Defendant.

---

A P P E A R A N C E S :

            TODD C. BANK, ATTORNEY AT LAW, P.C.
                119-40 Union Turnpike
                Fourth Floor
                Kew Gardens, NY 11415
            By:    Todd C. Bank
                   *Pro Se Plaintiff*

            MORRISON & FOERSTER LLP
                250 West 55th Street
                New York, NY 10019
            By:    David J. Fioccola
                   Adam J. Hunt
                   Tiffani B. Figueroa
                   *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

            Todd Bank, proceeding *pro se*, brings this action individually and on behalf of a

putative class.  Bank alleges that Uber Technologies Inc. ("Uber") violated the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and New York General Business Law

("NYGBL") § 399-p by making or authorizing four calls to Bank's residential telephone number

using an automatic-dialing mechanism with a prerecorded message ("robocall").  Defendant

Uber moves to dismiss Bank's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike the complaint's class allegations pursuant to Federal Rule of Civil Procedure 23(d)(1)(D).  For the reasons stated below, I grant defendant's motion to dismiss and I decline to exercise supplemental jurisdiction over the alleged violation of NYGBL § 399-p.

## BACKGROUND

Bank's complaint alleges the following facts, which I assume to be true for purposes of this motion.  *See, e.g.*, *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 135 (2d Cir. 2013) ("On a motion to dismiss for failure to state a claim on which relief can be granted, we assume the truth of the facts alleged.").

Between July 16, 2015 and July 21, 2015, Bank received, on his residential telephone line, four robocalls from Uber.  Compl. at ¶¶ 16-19.  After Bank answered the calls, an automated message would play using an artificial or prerecorded voice.  *Id.* at 20.  The script for the first three calls was:

> Hi.  It's Molly with Uber, and we need your help.  Uber ended the days when you couldn't get a ride home because cabs didn't want to leave Manhattan.  Now Mayor de Blasio is trying to bring the bad old days back because his millionaire taxi donors are telling him to.  But why on earth would your Council Member ever consider voting for something like this?  They should stand up for you, not take orders from the mayor.  Your Council Member is sponsoring this bill, and we need your voice.  Please call your council member, and tell them to take their names off Mayor de Blasio's anti-Uber bill.  Because you, and all New Yorkers, deserve reliable transportation.  Paid for by Uber 212 257-1745.

*Id.* at 22.  The script of the fourth call was:

> Hi.  It's Derrick with Uber, and we need your help.  Uber ended the days when New Yorkers had to worry about being able to find a reliable ride home; but now, Mayor de Blasio wants to cap the number of drivers that can partner with us, ending Uber as you know it, just because his millionaire taxi donors are telling him to.

2

> The Daily News has called de Blasio's cap on Uber quote
> disingenuous and a bad deal for New Yorkers.  Please call your
> council member and tell them to oppose the anti-Uber bill, because
> they should look out for you, not for the mayor's rich donors.  Paid
> for by Uber 212 257-1745.

*Id.* at 23.

Bank also alleges that thousands of robocalls were placed by, or on behalf of, Uber to purported class members.  *See id.* at 24, 26.  Moreover, Bank asserts that neither he nor other class members gave prior written consent to receive Uber's robocalls.  *Id.* at 27.

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted).  To survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 555).  A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (internal quotation marks omitted).

A.        *The TCPA Claims*

 Bank alleges that Uber violated the TCPA by initiating its robocalls without his prior consent.  Section § 227(b)(1)(B) of the TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  Uber asserts that Bank's TCPA claims fail as a matter of law because the robocalls were noncommercial, political calls exempt from TCPA liability.

 Although the TCPA does not identify exemptions to liability in the first instance, the statute authorizes the Federal Communications Commission ("FCC") to "prescribe regulations to implement the requirements of this subsection.  In implementing the requirements of this subsection, the Commission . . . may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe."  47 U.S.C. § 227(2)-(B).  Under this authority, the FCC has determined that calls made for political purposes are exempt from section 227(b)(1)(B) of the TCPA, provided that the caller adhere to certain identification requirements.  *See, e.g.,* FCC Enforcement Advisory No. 2012-06, 27 F.C.C. Rcd. 11017 (2012)*.*  Specifically, the caller must provide: (1) the name or entity responsible for the call, which must be provided at the beginning of the message; (2) the business entity's official name; and (3) the telephone number of the person or entity responsible for the call, which must be provided during or after the message.  *See id.*; 47 C.F.R. § 4.1200(b)(1).

 Here, Uber's robocalls are unmistakably political in nature.  Uber opposed Mayor de Blasio's proposed bill that would have severely restricted the number of for-hire vehicles that could be licensed to operate in New York City.  Def.'s Mot. at 3; *see also* Matt Flegenheimer, *De*

4

*Blasio Administration Dropping Plan for Uber Cap, for Now*, N.Y. TIMES, July 23, 2015, at A20. In response, Uber launched a political campaign employing the robocalls at issue to urge New Yorkers to contact their councilmembers and ask them to vote against the bill.  Moreover, the robocalls clearly adhered to the identification requirements set forth by the FCC for political speech exemptions.  *See* Compl. at ¶¶ 22-23.

Bank acknowledges that Uber's robocalls contain political material exempt from TCPA liability.  Pl.'s Opp'n at 4.  He argues, however, that the robocalls also contained impermissible material that subjects Uber to liability.  *Id.* at 2-5.  Specifically, Bank argues that the following portions of Uber's messages violated section 227(b)(1)(B) of the TCPA:  "Uber ended the days when you couldn't get a ride home because cabs didn't want to leave Manhattan. . . .  [Y]ou, and all New Yorkers, deserve reliable transportation," Compl. ¶ at 22, and "Uber ended the days when New Yorkers had to worry about being able to find a reliable ride home," *id.* at ¶ 23.  Bank asserts that these portions of the robocalls constitute "advertisements" under the TCPA and are therefore not exempt from liability under the political speech exemption.

An "advertisement" under the TCPA is limited to material that promotes the sale of a product or service because "messages that do not seek to sell a product or service do not tread heavily upon the consumer interests implicated by section 227."  *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14095 (2003); *see also Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015) ("An advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit.").  Here, I reject Bank's assertion that portions of the robocalls qualify as advertisements under the TCPA. Rather, the descriptions articulated by the robocalls contextualize Uber's interest in opposing the

proposed legislation and in its lobbying efforts against it.  Such a broad reading of the term "advertisement" would gut the exemption the FCC carved out for political speech.  *See Medco Health*, 788 F.3d at 224 (rejecting broad reading of "advertisement" under the TCPA).  Therefore, the challenged portions of the robocalls do not transform the overall messages into proscribed conduct under the TCPA.

Accordingly, because Bank's own pleading establishes as a matter of law that the robocalls at issue are political calls exempt from TCPA liability, I grant Uber's motion to dismiss.[1]

B.      *The NYGBL Claim*

Having granted Uber's motion to dismiss Bank's TCPA claims, I decline to exercise supplemental jurisdiction over the alleged violation of NYGBL § 399-p.  *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction" over related state law claims if the court "has dismissed all claims over which it has original jurisdiction"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

CONCLUSION

For the reasons stated above, the motion to dismiss is granted, and I decline to exercise jurisdiction over plaintiff's state law claim.

So ordered.
John Gleeson, U.S.D.J.

Dated: December 11, 2015
        Brooklyn, New York

---

[1]      Uber also asserts that First Amendment protections preclude liability in this case.  Because I grant its motion to dismiss on other grounds, I need not opine on such arguments.  *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (discussing the canon of constitutional avoidance in statutory interpretation).